### HALES v. UNITED STATES.
### Civ. No. 4011.

United States District Court
W. D. Oklahoma.
July 6, 1953.

Chas. H. Garnett and W. K. Garnett, of Oklahoma City, Okl., for plaintiff.

Robert E. Shelton, U. S. Atty., and Leonard L. Ralston, Asst. U. S. Atty. of Oklahoma City, Okl., for defendant.

VAUGHT, Chief Judge.

The plaintiff seeks to recover the sum of $10,000 from the defendant for losses allegedly sustained in the conduct of flight training schools for the defendant during World War II. In the original complaint filed July 8, 1948 he sought damages in the amount of $80,388.16 under the "Contract Settlement Act of 1944", as amended August 7, 1946, c. 864, sec. 1–6, 60 Stat. 902, 41 U.S.C.A. § 106, and note. With leave of court, an amended complaint was filed on February 28, 1950, wherein he sought to recover the sum of $10,000, specifically waiving any claim to damages or losses in excess of that amount, under the provisions of section 41(20), U. S. Code, prior to September 1, 1948, sections 1346, 1402, 28 U.S.Code, and the Contract Settlement Act of 1944, Act of July 1, 1944, c. 358, 58 Stat. 649, as amended by the Lucas Act, Act of August 7, 1946, c. 864, 60 Stat. 902, supra. On June 26, 1950, he filed an amendment to the amended complaint alleging that he was entitled to recover upon the facts set forth in the pleadings under the provisions of the Contract Settlement Act of 1944, supra, or in the alternative, under said Act as amended by the Lucas Act, supra, or in the alternative under an implied contract and obligation of the defendant to pay for the work and labor, supplies, services and expenditures made, furnished and incurred for the benefit of the defendant.

On February 2, 1949, the defendant answered the original complaint and on August 17, 1950, filed its answer to the amended amended complaint, in which it answered in detail all the plaintiff's allegations, denied that plaintiff was entitled to recover on any of the theories advanced, and sought to have judgment dismissing plaintiff's complaint.

There is very little dispute in the evidence and a large part of the facts are stipulated. The record discloses the following facts. A corporation known as the Southern Aviation, Inc., was formed by K. Cavett and George A. Hales in early 1942, for the purpose of training men to fly for the United States Army. This corporation subsequently was dissolved and its assets taken over by K. Cavett and George A. Hales as a partnership known as Southern Aviation, said partnership taking over the contracts the corporation had with the defendant. Subsequently, in February, 1943, the partnership between K. Cavett and George A. Hales was dissolved and Cavett transferred all his rights therein to George A. Hales who assumed all the contracts and liabilities of the partnership.

All of which was known and approved by the defendant. In early 1942, plaintiff had a lease on an airport known as the Country Club Airport and entered into several different contracts with the defendant for training men to fly for the U. S. Army as provided therein. The stipulation sets out the following:

"It is further stipulated and agreed that performance on all contracts was completed with the exception of Contract CCA–21346, which was terminated in accordance with Article 17, (b) and (c) thereof, which provided that it might be canceled by the Government at any time by giving thirty days notice, which notice was given by telegrams dated January 29, 1944 and April 29, 1944. It is also stipulated that full payment was made by the Government to the contractor as provided by the terms of said contracts.

"It is stipulated and agreed that Contract No. CCA–19901 dated April 1, 1943, and which expired by its terms on June 30, 1943, was in full force and effect during the time the contractor acquired the University Airport, and that subsequently and on July 1, 1943 Contract No. CCA–21346 was entered into."

In the performance of the contracts, the plaintiff assumed the obligation of providing a suitable airport for the training program. Article 17 of Contract No. Cca–21346 provided in part as follows:

"(b) Notwithstanding any other provision for termination contained herein, whenever the Administrator shall be of the opinion that the public interest so requires, this contract may be terminated by the Government, even though the Contractor be not in default, by giving 30 days notice in writing directed to the Contractor.

"(c) In the event of termination under sections (a) and (b) hereof, the Contractor shall be paid by the Government for work performed prior to such termination in accordance with the provisions of Article 3 hereof: *Provided,* That in the event such termination is pursuant to the provisions of section (a) of this Article, the Government may deduct from the amounts due under Article 3 hereof, any excess cost to the Government caused by the default of the Contractor."

No point is made that proper notice was not given, that proper settlement under Contract No. Cca–21346 was not made, or that the contract was improperly terminated.

Plaintiff claims that a large loss was sustained in the operation under the contracts by reason that certain plane materials and plane parts, et cetera, were not furnished by the Government as provided by the contract. But his principal claim is for loss sustained by virtue of the termination of his contract and the discontinuance and abandonment of what was known as the University Airport.

Plaintiff filed his claim with the Government for his loss under the Contract Settlement Act on August 10, 1944. He never filed a claim under the Lucas Act. Counsel for plaintiff concludes his brief, filed April 18, 1952, as follows:

"On the law questions involved, the plaintiff maintains that while his right to recover under the Contract Settlement Act or the Lucas Act may be subject to doubt, still his right to recover under the Tucker Act and the Fifth Amendment to the Constitution is clear and certain under the authorities submitted and under many other similar authorities not submitted."

The briefs, argument of counsel and the authorities cited have been carefully considered and the court is of the opinion that the plaintiff is not entitled to recover under the Contract Settlement Act or the Lucas Act. As to the Tucker Act and the Fifth Amendment, particularly the Tucker Act, there is a graver question.

■ The record discloses that under the first contracts the plaintiff operated the flying school from the Country Club Airport. He continued his operation from that airport until sometime in 1943, when the defendant notified him that because of existing conditions at Tinker Field, if the contracts were continued, the plaintiff

508

would have to change to another airport, it being contended by the defendant that it was hazardous and unsafe to continue to use the Country Club Airport for said operations. Quoting from plaintiff's testimony:

"Q. Were you notified * * * to change your airport for any reason? A. Yes. We were notified we must change ' our flying area and must change our airport.

"Q. Why? A. Tinker Field. The traffic was getting heavier at Tinker Field and we were within their flying area, their flight area. The Internal Air Traffic Control Board which was set up by the Army made inspection.

"Q. What did you do when you received that notice? A. Well, there was only one thing to do. We had to get us another airport or we couldn't fly." (R. 12.)

This resulted in the plaintiff acquiring and equipping another airport, subsequently known as the University Airport. In doing this plaintiff expended a considerable sum of money, and later, when Contract No. Cca–21346 was terminated, except for what he was able to salvage, the airport was a total loss, for which he contends he is entitled to recover, either under the Tucker Act or the Fifth Amendment. Both airports were approved by the defendant in their initial state, but the evidence discloses that during the transactions, conditions arose that justified the defendant in terminating their use for flying school purposes.

The Tucker Act, 28 U.S.C.A. § 1346(a) (2) provides:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or un-

liquidated damages in cases not sounding in tort."

Plaintiff contends that he comes squarely within the provisions of this statute, by reason of the fact there was an implied contract to pay for the loss. This question is not by any means a new one and has been fairly well settled.

In Horowitz v. United States, 267 U.S. 458, 461, 45 S.Ct. 344, 69 L.Ed. 736, a suit was brought to recover for a loss sustained by the contractor for an obstruction ·to the performance of his contract by the defendant resulting from its public and general acts as a sovereign. The Government having sold silk to the claimant, did not ship it promptly, owing to an embargo placed on freight shipments of silk by the United States Railroad Administration, so that the claimant lost ·his opportunity to resell at a profit. A demurrer to the petition was sustained by the ·Court of Claims and the plaintiff appealed. The Supreme Court affirmed the judgment, quoting from the opinion by Mr. Justice Sanford:

"It has long been held by the Court of Claims that the United States when sued as a contractor cannot be held liable for an obstruction to the performance of the particular contract resulting from its public and general acts as a sovereign. [Citing authorities.] In the Jones Case, [Jones v. U. S.] supra, [1 Ct.Cls. 383, 384] the court said: 'The two characters which the government possesses as a contractor and as a sovereign cannot be thus fused; nor can the United States while sued in one character be made liable in damages for their acts done in the other. Whatever acts the government may do, be they legislative or executive, so long as they be public and general, cannot be deemed specially to alter, modify, obstruct or violate the particular contracts into which it enters with private persons. * * * In this court the United States appear simply as contractors; and they are to be held liable only within the same limits that any other defendant would be in any other court. Though their sovereign acts performed for the gen-

eral good may work injury to some private contractors, such parties gain nothing by having the United States as their defendants.'"

The Tucker Act was involved in United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 217, 46 S.Ct. 501, 503, 70 L.Ed. 911. The Investment Company sued the United States for $571.26 under said Act, its claim arising as follows: In a cause pending in the United States District Court in Colorado the Investment Company was plaintiff and was required to place $15,143.-92 in the registry of the court, which the clerk deposited in a bank in Denver, designated by the court as one of its depositories. The money remained there from June 7, 1918 to May 6, 1920. During that period the bank paid two per cent interest per annum, semi-annually, into the United States Treasury for the use of the government. The petition alleged that for a long time prior thereto, interest paid by the bank on such court funds had been added to the deposit for the benefit of the party adjudged to own it. Shortly before this deposit, the Secretary of the Treasury, by regulation, required all United States depositaries having court funds to pay interest at two per cent to the Treasurer of the United States for its use. The government filed a demurrer to the complaint, which was overruled; a demurrer to the answer of the defendant was sustained and the judgment for $571.26 followed. The judgment was reversed by the Supreme Court, the opinion by Mr. Justice Taft holding as follows:

"But the Solicitor General argues that even if the United States had no right to collect the interest from the bank, no cause of action was created in favor of the Investment Company against the United States for this illegal collection, that there was no contract of the government, express or implied, by reason of that collection to pay it to the Investment Company, and that without this, no recovery can be had. This seems to us to be sound reasoning. An implied contract in order to give the Court of Claims or a district court under the Tucker Act jurisdiction to give judgment against the government must be one implied in fact and not one based merely on equitable considerations and implied in law. [Citing authorities.] There is nothing in the averments in the pleadings in this case to show that the officers of the government collected this interest or that it was received into the treasury for the benefit of the Investment Company."

In Goodyear Tire & Rubber Co. v. United States, 276 U.S. 287, 293, 48 S.Ct. 306, 307, 72 L.Ed. 575, the United States was sued by the owner of property for holding over after the termination date of a lease, claiming that there was an implied contract to pay the rent. The court, in an opinion by Mr. Justice Sanford, held:

"Furthermore, independently of that doctrine, the right here invoked to sue the United States under the Tucker Act on a claim founded on contract— as this is—must rest upon the existence of a contract express or implied in fact, no right of action being given by the Act in cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law. [Citing authorities.]"

The record discloses that the plaintiff suffered a loss on the University Airport. The plaintiff and his predecessors organized for the purpose of engaging in the undertaking of conducting a training school for fliers. They knew that in order to conduct such a school they would have to furnish and maintain at all times an airport that would comply with the requirements of the defendant, at their own expense. There is nothing in the contracts into which they entered that either expressly or impliedly could be construed that the defendant was concerned in any manner in the cost or maintenance of an airport except that it should meet with its requirements. Either party to the contracts under certain conditions set out therein was privileged to terminate the contract upon thirty days notice. Under such contracts the mere fact that the contractor suffers a loss in his business venture does not entitle him to recover.

**510**

In the case of Parish v. United States, 98 F.Supp. 347, 348, 120 Ct.Cl. 100, the plaintiff entered into a contract to construct an airport for the Government. There was a delay in the order to proceed with construction. The plaintiff, in anticipation of the order, moved material and equipment to the construction site and by reason of the delay suffered a substantial loss, for which he sued in the United States Court of Claims, where he was denied recovery, the court holding as follows:

"To prevail in the instant action, the plaintiff must establish a breach of contract upon which to predicate a claim for damages; the fact that plaintiff has sustained losses is not enough to enlarge the provisions of a written contract. * * * In this case, as in the Stafford case, supra, the plaintiff has presented nothing upon which to fashion a breach of contract, beyond the disappointment of the contractor in the mutual expectation that the starting date of plaintiff's work would not extend more than a few months beyond the award of the contract."

So in the case at bar, there is "nothing upon which to fashion a breach of contract" or to establish an implied contract to pay the plaintiff's loss on the University Airport beyond the expectation that the school would continue until he was made whole in his investment and would realize a reasonable profit on it. He knew the provisions of his contract and ran the risk, as all business men do in such a situation, and the loss falls on him and not the defendant, under all the authorities that have come to our attention.

■ As to the theory of counsel that there was a taking of the University Airport by the defendant within the language of the Fifth Amendment, we are not in accord. Counsel makes a very ingenious argument upon this theory, but the authorities cited do not apply to the facts proved. There is nothing in the record that amounts to a taking or seizure of the University Airport by the defendant.

The defendant is entitled to a judgment for its costs. Findings of fact, conclusions of law and a form of judgment, consistent with this opinion, may be submitted within thirty days from this date.